19-111318

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

_____

In Re:                                  Case No.  19-50653 RJK
                                        Chapter 7

Deborah L Stockwell

            Debtor.

_____

## NOTICE OF HEARING AND MOTION
## FOR RELIEF FROM STAY

TO:    The Debtor and other entities specified in Local Rule 9013-3(a).

1.    Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan (hereinafter "Movant"), by its undersigned attorneys, moves the Court for relief requested below and gives Notice of Hearing.

2.    The Court will hold a Hearing on this motion at 9:30 a.m. on September 16, 2019, in Courtroom No. 2, at Gerald W. Heaney Federal Building and United States Courthouse and Customhouse, 4th Floor, 515 West First Street, Duluth, MN 55802.

3.    Any response to this Motion must be filed and delivered no later than Wednesday September 11, 2019, which is five (5) days before the time set for the hearing (including Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.    This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, Federal Rule of Bankruptcy Procedure 5005, and Local Rule 1070-1.  This proceeding is a core proceeding.

5.    The petition commencing this case was filed on August 16, 2019.

6.    This Motion arises under 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy Procedure 4001.  This Motion is filed pursuant to Fed. R. Bankr. P. 9014 and Local Rules 4001-1 and 9013-1 through 9019-3.

7.      Movant Requests Relief from the automatic stay with respect to real property of subject to a mortgage lien, effective immediately, notwithstanding Fed. R. Bankr. P. 4001(a)(3).

8.      The Debtor executed a promissory note in the original amount of $82,500.00 dated September 12, 2006 (hereinafter the "Note" or "Debt Agreement").

9.      Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan directly or through an agent, has possession of the promissory note and held the note at the time of filing of the Movant's Motion for Relief from the Stay. The promissory note is made payable to Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan OR The promissory note has been duly indorsed.

10.     The Note is secured by a valid, perfected mortgage lien (hereinafter the "Mortgage"), executed by Deborah L Stockwell encumbering real property located at 504 NE 8th Ave, Grand Rapids, MN 55744 and legally described as:

> Lots 13 and 14, Block 6, Third Division of Grand Rapids, Itasca County, MN

11.     Movant is the holder of the Mortgage pursuant to assignment(s) of mortgage and is entitled to enforce the terms thereof.

12.     The Note and Mortgage provide that failure to make the payments due under the Note are a condition of default, the occurrence of which gives Movant the right to proceed with foreclosure of the Mortgage.

13.     The Debtor has failed to make the promised payments with respect to the Note and Mortgage and are therefore in default.

14.     As of August 21, 2019, the total amount of the Mortgage default is $5,420.48, which is detailed on Local Form 4001-1.

15.     As of August 21, 2019, the total balance owed under the Mortgage was $63,468.54.

16.     The current tax assessed value of the property is $72,500.00. The Debtor did not list the property or its value in the schedules of the bankruptcy petition.  Based upon available information, the Movant adopts $72,500.00 as the estimated fair market value of the property.

17.     In order to protect its interest in the secured property of the Debtor, the Movant must pursue its remedies to foreclose under Minnesota law.  Movant has and will incur legal fees and costs to protect and enforce its rights in the property.

18.     Cause exists for the Court to vacate the automatic stay imposed by 11 U.S.C. § 362(a), because the Debtor has failed to provide Movant with adequate protection. Further, Movant is entitled to termination of the automatic stay because there is insufficient equity in the property, nor is the property is necessary to an effective reorganization.

19.     **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

WHEREFORE, pursuant to 11 U.S.C. § 362(d), Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan, respectfully moves the Court for an Order:

1.     Granting relief from the automatic stay imposed by 11 U.S.C. § 362(a).

2.     Determining that the 14 day stay under Fed. R. Bankr. P. 4001(a)(3) be waived so that this order for relief is effective immediately upon entry.

3.     For such other and further relief as the Court finds equitable and just.

Dated: August 29, 2019

Signed: /s/ James Dohnalek
James A. Dohnalek, Jr. - 0399206
jdohnalek@logs.com
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 19-50653 RJK** |
| **Deborah L Stockwell** | § | |
| | § | **CHAPTER 7** |
| | § | |
| **DEBTOR** | § | |
| | § | |
| | § | |
| **Federal Home Loan Mortgage** | § | |
| **Corporation, as trustee for Freddie** | § | |
| **Mac Seasoned Credit Risk Transfer** | § | |
| **Trust, Series 2017-4, as owner of** | § | |
| **the Related Mortgage Loan** | § | |

## MOVANT

## <u>AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY</u>

I, Chastity Wilson - Assistant Secretary hereby state the following:

1.  I am a duly authorized representative of Federal Home Loan Mortgage

    Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust,

    Series 2017-4, as owner of the Related Mortgage Loan, ("Movant") and its

    successors and assigns, and hereby make this Affidavit in such capacity.  Federal

    Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit

    Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan, is

    organized and existing under the laws of the United States, and is authorized to

    sue on its own behalf.

2.  I am a custodian of records for Movant.  In the course of my employment, I have

    become familiar with the manner and method in which Movant maintains its

books and records in its regular course of business. Those books and records are managed by employees and agents whose duty is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

3. I have reviewed the books and records related to the Note secured by Mortgage of even date therewith covering real property located at 504 NE 8th Ave, Grand Rapids, MN 55744, and legally described as Lots 13 and 14, Block 6, Third Division of Grand Rapids, Itasca County, MN. A true and correct copy of the Note is attached as Exhibit A. A true and correct copy of the Mortgage is attached as Exhibit B.

4. Nationstar Mortgage LLC d/b/a Mr. Cooper services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and the foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan. Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan or has been

duly endorsed. Federal Home Loan Mortgage Corporation, as trustee for Freddie

Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related

Mortgage Loan is the original mortgagee or beneficiary or the assignee of the

security instrument for the reference loan.

5. The Note, in the original principal amount of $82,500.00, dated September 12,

2006, was executed by the original mortgagor Deborah L Stockwell, an unmarried

woman, to Lehman Brothers Bank, FSB, a Federal Savings Bank. The Mortgage,

in the original principal amount of $82,500.00, dated September 12, 2006, was

executed by the original mortgagor Deborah L Stockwell, an unmarried woman, to

Mortgage Electronic Registration Systems, Inc. as nominee for Lehman Brothers

Bank, FSB, a Federal Savings Bank.

6. Said Mortgage and Note were subsequently assigned, transferred or acquired by

Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned

Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage

Loan. A copy of the Assignment is attached as Exhibit C.

7. Debtor is in default on their obligations to Movant in that Debtor has failed to

make their installment payments when due and owing pursuant to the terms of the

above-described Note and Mortgage.

8. As of August 21, 2019, the total indebtedness was $63,468.54. Debtor is due 8

contractual payments (January 2019 - July 2019 at $561.97, August 2019 at

$555.69), totaling $4,489.48. The amount of the current monthly Mortgage

installment payment is $555.69.

9. By failing to make the regular monthly installment payments due pursuant to the Note and Mortgage, Debtor has not provided adequate protection to Movant.

10. Movant has had to retain counsel to represent it before this Court and Movant is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the terms of the Mortgage. The standard in the industry is for the attorney to charge a flat fee to complete a Motion for Relief from beginning to end. The fee charged is largely established and controlled by Fannie Mae, Freddie Mac, HUD or VA guidelines. The flat fee incurred to file this Motion for Relief was $750.00. The attorney incurred a cost of $181.00 to file the Motion. Therefore, Movant is requesting $931.00 in attorneys' fees and costs from the Debtor.

11. Nationstar Mortgage LLC d/b/a Mr. Cooper, is the authorized servicer for Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan and has the authority to act on their behalf pursuant to the limited power of attorney. Attached as Exhibit D is said limited power of attorney.

12. The current tax-assessed value of the property is $72,500.00, which Movant adopts as the fair market value of the property. Attached as Exhibit E is a true and correct copy of the Itasca County web page.

13. As of August 21, 2019, the total indebtedness to Movant was $63,468.54. The Debtor did not list the property or its value in the schedules of the bankruptcy petition. Upon information and belief, the encumbrances on the Property listed in

the Schedules or otherwise known, including but not limited to the encumbrances

granted to Movant, in order of priority are: (i) Movant $63,468.54

14. Attached as Exhibit F is a true and correct copy of the loan history beginning on

the date of default applicable to this Motion provided on Local Form 4001-1.

15. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

I declare that the foregoing facts are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT.

Our File No. 19-111318
Court File No. **19-50653 RJK**

By: Chastity Wilson

Print Name: Chastity Wilson
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

Title:_____

SUBSCRIBED AND SWORN TO before me by Chastity Wilson on this the 28 day of August, 20 19, to certify which witness my hand and seal of office.



MARY GRACIA
Notary Public, State of Texas
Comm. Expires 05-23-2020
Notary ID 130673528

Notary Public in and for the

State of ___**Texas**_____

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| September 12, 2006 | GRAND RAPIDS | MINNESOTA |
|---|---|---|
| [Date] | [City] | [State] |

504 NORTHEAST 8TH AVENUE, GRAND RAPIDS, MINNESOTA 55744
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    82,500.00    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is

LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.250    %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on   November 1 , 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   October 1, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   LEHMAN BROTHERS BANK, FSB
327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO 80112

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $   562.80      . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -**
Single Family - Fannie Mae UNIFORM INSTRUMENT

 -838N (0210)     **Form 3520 1/01**

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4      Initials: _____



EXHIBIT A



## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **October, 2011** , and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 25 HUNDREDTHS** percentage points ( **2.250** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **13.250** % or less than **2.250** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **13.250** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

~~I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.~~ xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

~~I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.~~ xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.



## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
DEBORAH L. STOCKWELL          -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                        -Borrower

PAY TO THE ORDER OF
LEHMAN BROTHERS HOLDINGS, INC.
WITHOUT RECOURSE
LEHMAN BROTHERS BANK, FSB

BY: _____
RICK W. SKOGG
VICE

PAY TO THE ORDER OF

_____
WITHOUT RECOURSE
LEHMAN BROTHERS HOLDINGS INC.
BY: _____
PAUL E. SVEEN
AUTHORIZED SIGNATORY          [Sign Original Only]

A0006003817

OFFICE OF THE COUNTY RECORDER
ITASCA COUNTY, MINNESOTA

CERTIFIED, FILED, AND
RECORDED ON
10/13/2006    03:00:00PM
FILE #

PAGES      20
REC FEES    $46.00

JEAN BENGSTON WINTER
ITASCA COUNTY RECORDER

BY _____ dlw _____ Dep

**EXHIBIT B**

Registration Tax on $ _189.75_ paid
ITASCA CO. NO._____
Jay Kolar, Auditor/Treasurer
_Roberta McMurphy_ , Deputy

------------- [Space Above This Line For Recording Data] -------------

# MORTGAGE

MIN ▮▮▮▮▮▮

Return To:   AURORA LOAN SERVICES, LLC
             601 5th Ave, PO Box 4000
             Scottsbluff, NE 69363

**\*THIS MORTGAGE IS BEING RE-RECORDED
TO INCLUDE THE PREPAYMENT RIDER.**

F ATCO
7235 Ohms Lane
Edina, MN  55439
ATTN: Recording Dept.

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) **"Security Instrument"** means this document, which is dated   September 12, 2006
together with all Riders to this document.

LOAN #▮▮▮▮▮

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3024 1/01

VMP -6A(MN) (0005)

Page 1 of 15          Initials: _NS_

VMP MORTGAGE FORMS - (800)521-7291

**(B) "Borrower"** is    DEBORAH L STOCKWELL , AN UNMARRIED WOMAN

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is    LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

Lender is a    FEDERAL SAVINGS BANK
organized and existing under the laws of    UNITED STATES
Lender's address is    327 INVERNESS DRIVE SOUTH , ENGLEWOOD, CO  80112

**(E) "Note"** means the promissory note signed by Borrower and dated    September 12, 2006
The Note states that Borrower owes Lender
    EIGHTY TWO THOUSAND FIVE HUNDRED & 00/100                          Dollars
(U.S. $        82,500.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    October 1, 2036

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] PREPAY/ |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

County                        of    Itasca                                    :
　　　[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]:

LOTS 13 AND 14, BLOCK 6, THIRD DIVISION OF GRAND RAPIDS,
ITASCA COUNTY, MN.

Parcel ID Number:                                which currently has the address of
504 NORTHEAST 8TH AVENUE                                        [Street]
GRAND RAPIDS                       [City], Minnesota    55744    [Zip Code]
("Property Address"):

Initials: _____

-6A(MN) (0005)            Page 3 of 15            Form 3024  1/01

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Initials: 



Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Initials: _____

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's

knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by



Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be

Initials: 

treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may

Initials: 

Form 3024  1/01

reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.





BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        DEBORAH L STOCKWELL      -Borrower


_____        _____ (Seal)
                                                                 -Borrower


_____ (Seal)  _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)  _____ (Seal)
                       -Borrower                                 -Borrower


_____ (Seal)  _____ (Seal)
                       -Borrower                                 -Borrower

STATE OF MINNESOTA,            *Itasca*                     County ss:

On this *12th* day of *September, 2006*           , before me appeared

*Deborah L. Stockwell, Single*

to me personally known to be the person(s) described in and who executed the foregoing instrument and
acknowledged that he/she/they executed the same as his/her/their free act and deed.

_____
Notary Public

My Commission Expires:

SHERI A. LeSARGE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan 31 2010

This instrument was drafted by:

TODD BANNISTER
AURORA LOAN SERVICES
327 INVERNESS DRIVE SOUTH
ENGLEWOOD, CO 80112

Tax statements for the real property described in this instrument should be sent to:

P.O. BOX 1706
SCOTTSBLUFF, NE 69363-1706

Initials: ____

**A000731244**
**OFFICE OF THE COUNTY RECORDER**
**ITASCA COUNTY, MINNESOTA**
**CERTIFIED, FILED, AND**
**RECORDED ON**
**5/29/2019   3:53:10 PM**
PAGES:   2
REC FEES: 46.00

**NICOLLE ZUEHLKE**
**ITASCA COUNTY RECORDER**
BY___NZ_____Dep
**RECORDED ELECTRONICALLY**

### CORPORATE ASSIGNMENT OF MORTGAGE

Itasca, Minnesota

Date of Assignment: May 23rd, 2019
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS
BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026, FLINT, MI
48501-2026
Assignee: FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR FREDDIE MAC SEASONED
CREDIT RISK TRANSFER TRUST, SERIES 2017-4,AS OWNER OF THE RELATED MORTGAGE LOAN at 8200
JONES BRANCH DRIVE, MCLEAN, VA  22102-3110

Executed By: DEBORAH L STOCKWELL, AN UNMARRIED WOMAN  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS
BANK
Date of Mortgage: 09/12/2006 Recorded: 10/13/2006  as Instrument No.: A000603817 ReRecorded 05/29/2007  as
Instrument No.: A000811089  In the County of Itasca, State of Minnesota.

Property Address: 504 NORTHEAST 8TH AVENUE, GRAND RAPIDS, MN  55744

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $82,500.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK,
FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND ASSIGNS
On May 23rd, 2019

By:_____
MOHAMED HAMEED, Vice-President

STATE OF Texas
COUNTY OF Dallas

On May 23rd, 2019, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Vice-President of MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK, ITS
SUCCESSORS AND ASSIGNS, P.O. BOX 2026, FLINT, MI  48501-2026, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

_____
DANIELA HORVATH
My Commission Expires: 01/27/2020  #128862890

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

(This area for notarial seal)



**EXHIBIT C**

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2
Prepared By:  Tim Jackson,  NATIONSTAR MORTGAGE DBA MR. COOPER 8950 CYPRESS WATERS BLVD, COPPELL, TX
75019 1-888-480-2432
 When Recorded Return To:  DOCUMENT ADMINISTRATION  NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD, COPPELL, TX  75019

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Nationstar Mortgage LLC
d/b/a Mr. Cooper
4000 Horizon Way
Attention: Kira Allen
Irving, Texas 75063

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that the Federal Home Loan Mortgage Corporation as Trustee ("Trustee") for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, pursuant to the Pooling and Servicing Agreement, dated as of December 13, 2017 (the "Agreement"), among Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), as a servicer, Wilmington Trust, National Association, as Trust Agent, and the Federal Home Loan Mortgage Corporation as Trustee, Seller and Guarantor, and U.S. Bank National Association, as Securities Administrator, hereby constitutes and appoints Nationstar by and through Nationstar's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans and REO properties subject to the terms of the Agreement for the purpose of performing all acts and executing all documents in the name of the Trustee as may be customarily and reasonably necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is the Trustee (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Nationstar is performing sub-servicing activities all subject to the terms of the Agreement.

This appointment shall apply to the following enumerated transactions only:

1.  The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued and said modification or rerecording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured.

2.  The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a United States governmental agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.  The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4.  The completion of loan assumption and modification agreements.

5.  The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

**EXHIBIT D**

6. The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7. The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8. With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

   a) the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

   b) the preparation and issuance of statements of breach or non-performance;

   c) the preparation and filing of notices of default and/or notices of sale;

   d) the cancellation/rescission of notices of default and/or notices of sale;

   e) the taking of a deed in lieu of foreclosure; and

   f) the preparation and execution of such other documents and performance such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8(a) through 8(e), above.

The execution and delivery of this Limited Power of Attorney by Trustee shall not be (or be deemed) a waiver or discharge of any representation, warranty, covenant or agreement of the Trustee or Nationstar in or under the Agreement (other than a discharge of the obligations of the Trustee under the Agreement to execute and deliver this Limited Power of Attorney), and such execution and delivery shall not be (or be deemed) a modification or amendment of any provision of the Agreement in any respect.

This Limited Power of Attorney may be amended, modified, supplemented or restated only by a written instrument executed by the Trustee and Nationstar. The terms of this Limited Power of Attorney may be waived only by a written instrument executed by the party waiving compliance.

This Limited Power of Attorney shall inure to the benefit of, and be binding upon, the Trustee and Nationstar and their respective successors and assigns; provided, however, that Nationstar shall not assign any of the rights under this Limited Power of Attorney (except by merger or other operation of law) without the prior written consent of the Trustee, and any such purported assignment without such consent shall be void and of no effect.

This Limited Power of Attorney shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to any conflicts of law rules that might apply the Laws of any other jurisdiction.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or

powers granted by or under this Limited Power of Attorney, each subject to the terms and conditions set forth in the Agreement and in accordance with the standard of care set forth in the Agreement as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof. This Limited Power of Attorney shall be effective as of December 13, 2017.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

Nothing contained herein shall (i) limit in any manner any indemnification provided by Nationstar to the Issuer, Trustee, Seller or Guarantor under the Agreement, or (ii) be construed to grant Nationstar the power to initiate or defend any suit, litigation or proceeding in the name of Federal Home Loan Mortgage Corporation in its individual capacity except to the extent permitted under the Agreement for routine foreclosure, bankruptcy and eviction litigation. If Nationstar receives any notice of suit, litigation or proceeding in the name of Federal Home Loan Mortgage Corporation in its individual capacity, then Nationstar shall promptly forward a copy of same to such party.

This Limited Power of Attorney is not intended to extend the powers granted to Nationstar under the Agreement or to allow Nationstar to take any action with respect to security instruments or promissory notes (or other evidence of indebtedness) not authorized by the Agreement.

*[Remainder of page left intentionally blank]*

IN WITNESS WHEREOF, Federal Home Loan Mortgage Corporation, as Trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, has caused these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this 20th day of December, 2017.

Federal Home Loan Mortgage Corporation, as Trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4

By: _____
Name: Amy Moorhus Baumgardner
Title: Vice President

Witness: _____
Printed Name: Robert Armen Melikian

Witness: _____
Printed Name: Bruce Hurwitz

STATE OF VIRGINIA

COUNTY OF FAIRFAX

On December 20, 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Amy Moorhus Baumgardner of Federal Home Loan Mortgage Corporation, as Trustee, personally known to me to be the person whose name is subscribed to the within instrument and acknowledge to me that she executed that same in her authorized capacity, and that by her signature on the instrument the entity upon behalf of which the person acted and executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public
My Commission Expires: 7|31|20

KIMBERLY ANNE LACKEY
NOTARY PUBLIC
[NOTARIAL SEAL]
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES JULY 31, 2020

8/21/2019                                                    Itasca County Parcel Info System



## Itasca County Parcel Information System
Itasca County's Web Site

Wed, Aug 21, 2019
Parcel Info Data Date: August 21, 2019
CRV Info Data Date: August 21, 2019
Payment Detail Data Date: August 21, 2019

Parcel Information        CRV Information        Lake Finder        FAQ        Request Info

## 2018 Assessor's Market Values
## For Taxes Payable In 2019

Record Details          **Parcel Number: 91-425-0630**

**Taxpayer of Record**

STOCKWELL, DEBORAH L
504 NE 8TH AVE
GRAND RAPIDS MN 55744

| Physical Address: | 504 NE 8TH AVE GRAND RAPIDS MN 55744 |
|---|---|
| Plat Name: | THIRD DIVISION OF GRAND RAPIDS |
| 1st Line of Legal Desc: | LOTS 13-14 BLK 6 |
| Deeded Acres: | 0.16 |
| Sec-Twp-Rng: | 21-55-25 |
| Lake (# / Name): | |
| Emergency Number: | NOT AVAILABLE |



View the Itasca County GIS map for this parcel in a NEW WINDOW.

This parcel has **1** property tax classification(s).  Valuations are provided below for each classification.

| Class Code 201 Residential 1 unit | |
|---|---|
| Land Value: | $22,900 |
| Building Value: | $49,600 |
| Total Class Value: | $72,500 |

Total Land Value = **$22,900**
Total Building Value = **$49,600**
Grand Total Value = **$72,500**

91-425-0630
Click Here To See The
Current Year Tax Record
For This Parcel

Click here for Last Year's Tax Statement

Minnesota Counties Information Systems (MCIS) makes no warranties, implied or explicit, as to the accuracy or completeness of this data. The data presented on this site is provided directly by the County, and MCIS merely converts it to a searchable web format. This data is intended to be used for informal informational purposes only. It is not intended for use in abstract work, land surveys, title opinions, appraisals, or any other legal documents or for any other purposes. For up-to-date and/or certified information, the user should contact the County Auditor/Treasurer.

Minnesota Counties Information Systems
Grand Rapids, MN
Website hosting & maintenance provided by Two Dogs in the Web, LLC

# EXHIBIT E

Local Form 4001-1
Loan History

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date | Amount Rec'd From Debtor(s) (a) | Monthly Amount Due Principal/Interest (b) | CHARGES Monthly Amount Due Escrow (c) | CHARGES Amount Due Late Fees (d) | CHARGES Amount Due Other Charge* (e) | Description of Other Charge |
|---|---|---|---|---|---|---|
| 1/1/2019 | | $419.13 | $142.84 | | | |
| 2/1/2019 | | $419.13 | $142.84 | | | |
| 3/1/2019 | | $419.13 | $142.84 | | | |
| 4/1/2019 | | $419.13 | $142.84 | | | |
| 5/1/2019 | | $419.13 | $142.84 | | | |
| 6/1/2019 | | $419.13 | $142.84 | | | |
| 7/1/2019 | | $419.13 | $142.84 | | | |
| 8/1/2019 | | $419.13 | $136.56 | | $931.00 | MFR Attorney's Fees |
| | | | | | | |
| Total | $0.00 | $3,353.04 | $1,136.44 | $0.00 | $931.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

*Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

**Note: Columns (b) + (c) + (d) + (e) - (a) must equal the current default amount that is claimed in the motion.**

Attorneys fees and filing fee for the motion, if allowed under note and/or mortgage and sought by Movant to resolve motion         $931.00

Current Default Amount Claimed in the Motion         $5,420.48

Escrow Balance (amounts held for payment of taxes, insurance, etc.)         $0.00

Suspense Account Balance (amount of unapplied payments)         $0.00



EXHIBIT F

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MINNESOTA

_____

In Re:                                    Case No. 19-50653 RJK
                                          Chapter 7

**Deborah L Stockwell**

     Debtor.

_____

## MEMORANDUM OF LAW

Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan ("Movant"), submits this memorandum of law in support of its Motion for Relief from the stay in the above-entitled matter.

## FACTS

On September 12, 2006, Debtor made, executed, and delivered a Promissory Note to Lehman Brothers Bank, FSB, a Federal Savings Bank for $82,500.00 ("Note"), which is secured by a Mortgage dated September 12, 2006, and recorded October 13, 2006, in Itasca County as Document Number A000603817. Said Mortgage was executed by Debtor.  The Mortgage has been assigned to Movant via assignment of mortgage.  The mortgage encumbers real property at 504 NE 8th Ave, Grand Rapids, MN 55744.

The Debtor filed a petition under Chapter 7 of Title 11 of the U.S. Code.  The Debtor in this case has failed to make the contractual payments required by the Note and Mortgage, as evidenced by Local Form 4001-1.

## ARGUMENT

### I.   THE MOVANT HAS STANDING TO BRING THIS MOTION FOR RELIEF FROM THE STAY TO FORECLOSE THE MORTGAGE

A "party in interest" has standing to make a motion for relief from the stay, after notice and hearing.   11 U.S.C. § 362 (d).  The holder of a note and mortgage, or its authorized agent, has standing to bring a stay relief motion.  *See, e.g., In re Jacobson,* 402 B.R. 359, 366 (Bankr. W.D. Wash. Mar. 6, 2009) (as modified Mar. 10, 2009).  In the District of Minnesota, Local Bankruptcy Rule 4001-1 specifies the evidence that the movant must provide to the court in order to prove standing for a motion for relief from stay, including a copy of the note, copy of the mortgage recorded in the land records, any assignments if the movant is not the original mortgagee, and any other evidence that the movant has authority to make the motion.  Loc. R. Bankr. P. 4001-1(b)(1). *See also* LRBP 90132(a); LRBP 9013-2(d).

Exhibits A through C submitted in support of this motion show the chain of title that gives Movant standing to seek relief from the automatic stay.  The Note is made payable to the Movant or has been duly indorsed. Movant has possession of the Note directly or through an agent. The Mortgage was recorded in the county in which the property is located, and the Movant is the original mortgagee, the beneficiary, or the assignee of the Mortgage.  The Movant has provided sufficient evidence to show that it is a party entitled to enforce the terms of the Note and Mortgage, and likewise, that Movant has standing to bring this Motion for Relief.

### II.   MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY "FOR CAUSE" UNDER 11 U.S.C. § 362(d)(1)

Section 362(d) of the Bankruptcy Code governs relief from the automatic stay.  11

U.S.C. § 362(d).  Under Section 362(d)(1), relief from the automatic stay shall be granted

upon request of a party in interest "for cause, including the lack of adequate protection of

an interest in property of such party."  11 U.S.C. § 362(d)(1).  Cause has been defined to

mean "any reason whereby a creditor is receiving less than his bargain from a debtor and

is without a remedy because of the bankruptcy proceeding."  *In re Martens*, 331 B.R.

395, 398 (8th Cir. B.A.P. 2005) (internal citation omitted).  A secured creditor's interest

is not adequately protected where its collateral is depreciating in value.  *See United Sav.*

*Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 370 (1988).  Other

grounds for granting relief from the stay to the creditor "for cause" include that the debtor

is not insuring the property or the debtor is failing to pay ongoing utilities, real estate

taxes, or homeowners' association dues which lead to liens that affect the creditor's

position.  *See, e.g., In re Biltwood Properties LLC*, 473 B.R. 70 (Bankr. M.D. Pa. 2012)

(although Chapter 11 debtor was making regular mortgage payments, the creditor was not

adequately protected and was thus entitled to stay relief where the debtor had failed to

pay real estate taxes resulting in a superior tax lien); *In re Harwood Hideout, Inc.*, 2005

WL 894828 (Bankr. D. N.D. 2005) (mortgagee was entitled to relief from the stay unless

debtor provided proof of insurance and cured any existing tax deficiencies).  The burden

of proof is on the debtor to demonstrate lack of cause by showing that adequate

protection has been provided to the creditor.  11 U.S.C. § 362(g)(2).

The Debtor has failed to make the contractual payments with respect to the Note

and Mortgage and are therefore in default.  *See* Exhibit F, Local Form 4001-1.  The

Debtor has not otherwise provided Movant with adequate protection of its interest in the subject property.  Such circumstances constitute cause within the meaning of Section 362(d)(1), justifying relief from the stay.

### III.    MOVANT IS ENTITLED TO RELIEF FROM THE STAY UNDER 11 U.S.C. § 362(d)(2) BECAUSE THERE IS INSUFFICIENT EQUITY IN THE PROPERTY

Section 362(d)(2) of the Bankruptcy Code provides a separate and independent basis for relief from the automatic stay.  Stay relief shall be granted where (A) the debtor does not have any equity in such property; and (B) the property is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).  A creditor is entitled to relief from the automatic stay if the debtor is not making mortgage payments, and if there is insufficient equity in the property to adequately protect the creditor.  *In re Martens*, 331 B.R. at 398. The test for equity under § 362(d)(2) compares all encumbrances against the property to the property's current value, whether or not all lienholders have requested relief from the stay.  *In re Bowman,* 253 B.R. 233, 238 (B.A.P. 8th Cir. 2000).  Where there exists no equity in the property, it is incumbent upon a debtor to make a showing that the property is necessary to an effective reorganization in order to defend against the motion.  *In re Embassy Enterprises of St. Cloud,* 125 B.R. 552, 554 (Bankr. D. Minn. 1991).  Because Chapter 7 is not a reorganization chapter, all the creditor need prove in a Chapter 7 case is that the debtor has no equity in the collateral.  11 U.S.C. §362(d)(2)(A); *In re Gess,* 526 B.R. 798, 802 (B.A.P. 8th Cir. 2015) (relief from the stay properly granted under section 362(d)(2) where the value of a van was less than the amount owed on the loan and the debtors conceded that the van was not needed for an effective reorganization in a

Chapter 7 case); *see also In re Martens*, 331 at 398 (relief properly granted where a Chapter 7 debtor failed to make any payments on the secured loan for nearly a year, there was insufficient equity in the property to adequately protect the creditor, and by definition the property was not necessary to a reorganization).

As evidenced by the verified facts submitted along with this motion, the Debtor has failed to make the payments required by the Note and the Mortgage.  Factoring in holding and marketing costs, and standard realtor commission, there is likely no equity in the property.  Accordingly, the Movant is entitled to relief from the automatic stay under § 362(d)(2).

<u>**CONCLUSION**</u>

The facts set forth above establish adequate cause to support a lift of the automatic stay, and that the 14 day stay pursuant to Bankruptcy Rule 4001(a)(3) be waived. Therefore, the Movant is entitled to an Order for relief from the stay to foreclose its Mortgage on the property and protect its security interest under state law.

Respectfully submitted,

Dated: August 29, 2019

Signed: <u>/s/ James Dohnalek</u>
James A. Dohnalek, Jr. - 0399206
jdohnalek@logs.com
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060

19-50653 RJK

<u>CERTIFICATE OF SERVICE</u>

**STATE OF MINNESOTA**        )
                             ) SS
**COUNTY OF DAKOTA**          )

I, Madeline Dopp, declare under penalty of perjury, say that on August 29, 2019, I mailed via U.S. Mail and CM/ECF emailed copies of the Notice of Hearing and Motion for Relief from Stay, Affidavit, annexed Memorandum of Law, Proposed Order for Relief from Stay, and Certificate of Service on the following interested parties at their last known address.

Service Via U.S. Mail

Deborah L Stockwell
120 NE 10th Avenue Apt 10
Deer River, MN 56636

Additional Copy(s) served electronically through the Court's ECF System or by first class U.S. mail postage addressed to:

Attorney for Debtor:                 Trustee:
John P. Dimich                       Nauni Jo Manty
Dimich Law Office                    Manty & Associates PA
432 NE 3rd Ave                       401 Second Avenue North
Grand Rapids, MN 55744               Suite 400

                                     U. S. Trustee
                                     1015 U.S. Courthouse
                                     300 South 4th St.
                                     Minneapolis, MN 55415


                                     */s/ Madeline Dopp*
                                     Madeline Dopp

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

                                  Case No.  19-50653 RJK

Deborah L Stockwell

      Debtor.

## <u>ORDER GRANTING RELIEF</u>

This case is before the court on the motion of Federal Home Loan Mortgage Corporation, as trustee for Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2017-4, as owner of the Related Mortgage Loan, for relief from the automatic stay imposed by 11 U.S.C. § 362(a).

Based on the records, the court finds that grounds exist under 11 U.S.C. § 362(d) to warrant relief.

**IT IS ORDERED:**

1.      The motion for relief from stay is granted as follows.

2.      The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that the movant may exercise its rights and remedies under applicable nonbankruptcy law with respect to the following property:

Lots 13 and 14, Block 6, Third Division of Grand Rapids, Itasca County, MN

3.      Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this order is effective immediately.

Dated: _____       _____

                                         United States Bankruptcy Judge